IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

DOUGLAS M. DANCER                                                    PLAINTIFF

v.                          Civil No. 4:11-cv-04041

NURSE BROWN                                                      DEFENDANT

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff, Douglas Dancer (hereinafter Dancer), pursuant to the provisions of 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

Dancer is currently an inmate of the Arkansas Department of Correction (ADC), Varner Unit, in Grady, Arkansas. The events that are the subject of this lawsuit occurred while Dancer was incarcerated in the Miller County Detention Center (MCDC) in Texarkana, Arkansas. Dancer alleges his constitutional rights were violated when Defendant, Nurse Brown (hereinafter Brown), failed to provide him with adequate medical care.

Brown filed a motion for summary judgment (ECF No. 21). Dancer requested the Court's assistance (ECF No. 31) in responding to the motion by the preparation of a questionnaire (ECF No. 34). Dancer filed a timely response to the questionnaire (ECF No. 35).

Brown also has pending a motion to dismiss (ECF No. 29) based on Dancer's failure to respond to an order of the Court and his failure to prosecute this action. However, this motion was rendered moot when Dancer was given until February 15, 2012 (ECF No. 34), to respond to the

pending summary judgment motion.

### 1. Background

Dancer was incarcerated at the MCDC from November 13, 2009, until August 19, 2011. *Plaintiff's Response* (Doc. 35) at ¶ 1 (hereinafter *Resp.*). He was incarcerated at the MCDC while awaiting transport to the ADC. *Id.* at ¶ 2. For non-emergency medical and dental care, the MCDC was to obtain consent from the ADC for the care or treatment. *Id.* at ¶ 3.

On August 21, 2010, Dancer had a boil on his arm and was prescribed bactrim, an antibiotic. *Id.* at ¶ 4(A)-4(B). On December 26th, Dancer was again prescribed bactrim because of a boil. *Id.* at ¶¶ 5-6.

On January 6, 2011, Dancer was prescribed colace. *Resp.* at ¶ 7. He believes this prescription was for constipation. *Id.* at ¶ 8.

Dancer first complained of dental pain on April 14th. *Resp.* at ¶ 9. He also stated he was having back pain and needed his eyes checked because he could barely see. *Id.*

According to Brown, Nurse Callwood attempted to evaluate Dancer on April 19th but he refused to be seen at sick call. *Defendant's Exhibit* (hereinafter *Deft's Ex.*) A-2. However, Dancer asserts that he did not refuse sick call that day. *Resp.* at ¶¶ 10(A) & 10(C). He states either the officer never came to get him that day or he didn't bother waking Dancer up. *Id.*. In Dancer's opinion, "[t]hey took to[o] long to respond" to his sick call request. *Id.* at ¶ 10(C).

Dancer next submitted a health service request on April 25th. *Resp.* at ¶ 12. He stated his teeth were still hurting and his eyes were getting worse. *Id.* He indicates his teeth hurt when he chewed his food and the Ibuprofen "didn't quite ease the pain." *Id.*

Nadia Brown is a licensed practical nurse and the health services administrator for

Correctional Health Care Management Services (CHM).  *Resp.* at ¶ 13.  Brown saw Dancer on April 27th.  *Id.* at ¶ 14(A).  She prescribed Ibuprofen for Dancer's teeth.  *Id.*

That same day, Brown faxed a health services request form to the ADC.  *Resp.* at ¶ 14(B).  She noted Dancer had put in several sick call requests regarding toothaches and eye sight problems.  *Id.*  She noted Dancer had six or more broken and decayed teeth.  *Id.*  She stated she prescribed him Ibuprofen and put him on the dental list for June 10th.  *Id.*

Dancer indicates he was told the dentist came only every two months.  *Id.*  He believes he was not put on the list to see the dentist until Brown found out about the lawsuit.[1]  *Resp.* at ¶ 14(B).  The ADC approved Dancer to be treated by a local dentist for simple fillings or extractions.  *Id.* at ¶ 14(C).

On May 26th, Dancer submitted a grievance stating he was paying for medical and was supposed to get medical care despite being ADC property.  *Resp.* at ¶ 14(D).  In response, Brown noted Dancer was on the list to see the dentist June 10th.  *Deft's Ex.* A-9.  With respect to Dancer's eyes, she stated she had notified the ADC about his need for eye care and was told that it was not "an emergency.  Treat locally."  *Id.*  Dancer indicates he was told that he had to wait and let the ADC take care of his eye problems.  *Id.*

Dancer was seen by a dentist on June 10th.  *Resp.* at ¶ 15(A).  Four teeth were extracted.  *Id.* at ¶ 15(B).  Dancer was given a prescription for Ibuprofen and put on a soft diet for three days.  *Id.*

The dentist concluded Dancer needed all his teeth extracted.  *Resp.* at ¶ 15(C).  However, there was insufficient time to pull all Dancer's teeth that day so Dr. Cantrell, the dentist, worked on one side of Dancer's mouth.  *Id.* at ¶ 15(D).  On June 15th, Dancer was prescribed Ibuprofen until

---

[1] This lawsuit was filed on May 12, 2011.  (ECF No. 1)  Brown was served on June 2nd.  (ECF No. 14).

he went to the ADC. *Id.* at ¶ 16.

According to Dancer, he had toothaches constantly and the Ibuprofen did not relieve his dental pain. *Resp.* at ¶¶ 20-21. Dancer indicates his "teeth was paining me so bad it infected my mouth." *Id.* at ¶ 21. Dancer also states the dentist at the ADC Diagnostic Unit told him that his teeth should have been pulled before he was transferred. *Id.* Dancer was prescribed something for the infection and scheduled to have all his teeth extracted. *Id.*

Dancer was seen by the doctor on July 21st regarding his eye problems and prescribed Clear Eyes. *Resp.* at ¶ 17(A). The doctor recommended that Dancer be seen by an optometrist. *Id.* Dancer was to be scheduled to see an optometrist, Dr. Angela Perry, for evaluation. *Id.* at ¶ 17(B).

Brown contacted Dr. Perry's office that day to schedule an appointment for Dancer. *Deft's Ex.* A at ¶ 7. Dr. Perry's office stated they would not schedule an appointment for Dancer unless pre-payment was made by the ADC. *Id.* Brown called the ADC but it would not give its consent for pre-payment. *Id.* at ¶ 8.

Dancer indicates he was never told that the optometrist's office was requesting payment up front. *Resp.* at ¶ 17(D). Instead, he states he was told he was scheduled to see the eye doctor on August 19th. *Id.* Dancer received the Clear Eyes but the drops did not help. *Id.* at ¶¶ 17(F) & 17(G).

According to Brown, Dancer was scheduled to have the remainder of his teeth extracted on August 19th. *Deft's Ex.* A at ¶ 10. However, prior to the arrival of the dentist, Dancer was transferred to the Diagnostic Unit of the ADC. *Resp.* at ¶ 19. Dancer points out that the transport officer was from Miller County. *Id.*

Dancer maintains that Brown ignored his sick call slips and his situation until she was served with the lawsuit. *Resp.* at ¶ 22. Prior to his incarceration at the MCDC, Dancer states he did not

have problems with his teeth or eyes.  *Id.* at ¶¶ 23-24.

### 2.  Applicable Standard

"Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  We view all evidence and inferences in a light most favorable to the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  However, the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial.  *See Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

### 3.  Arguments of the Parties

Brown denies that she exhibited deliberate indifference to Dancer's serious medical needs. Moreover, she maintains that there is no evidence that a custom or policy of Miller County resulted in a violation of Dancer's constitutional rights.

Dancer argues his medical needs were ignored until he filed this lawsuit.  *Resp.* at ¶ 22. However, Dancer states that everything has been taken care of since he was transferred to the ADC. *Id.* at pg. 18.  He indicates he does not want to be the "bad guy" so whatever the Court decides he is fine with him.  *Id.*  Although it took "days to get treated," Dancer states Brown was "probably just trying to do her job." *Id.*

### 4.  Discussion

The Eighth Amendment imposes duties on detention center officials to ensure prisoners receive adequate medical and dental care.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "An official who is deliberately indifferent to a prisoner's medical needs is subject to suit under § 1983." *McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009).  The deliberate indifference standard "has

both an objective and subjective component." *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009). The standard requires a plaintiff to show: (1) the deprivation alleged is objectively serious; and (2) the official knew of and then disregarded an excessive risk to the plaintiff's health or safety. *Farmer*, 511 U.S. at 834.

Regardless of whether Dancer was an ADC commitment, the fact remains Dancer was in the custody of the MCDC and they had a constitutional duty to ensure Dancer received proper care. *Langford v. Norris*, 614 F.3d 445, (8th Cir. 2010). It is undisputed that "obvious and serious dental problems constitute[] a serious medical need." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011); *see also Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004)(plaintiff who had severe pain from loose and infected teeth, which caused blood to seep from his gums, swelling, and difficulty sleeping and eating had alleged an objectively serious medical need); *McAlphin v. Toney*, 281 F.3d 709, 711 (8th Cir. 2002).

Here, Dancer first sought dental treatment on April 14, 2011. For whatever reason, Dancer missed sick call on April 19th. He submitted another medical request on April 25th based on continued pain. He was seen by Brown on April 27th, prescribed Ibuprofen, ADC approval was sought and received for the treatment, and he was placed on the list to see the dentist on June 10th. At the June 10th visit, the dentist concluded all Dancer's teeth needed to be extracted but due to time restraints only four teeth were extracted. Dancer was prescribed Ibuprofen and given a soft diet for three days. Dancer was scheduled for another dental visit on August 19th. However, he was transferred that day to the ADC.

I do not believe there is a factual question as to whether Brown exhibited deliberate indifference to Dancer's serious dental needs. Although he did not receive dental care as quickly as

he would like, this delay was not due to Brown's deliberate indifference. Instead, the delay was mainly due to scheduling difficulties. Dancer was provided Ibuprofen for pain relief. Nothing before the Court indicates that Dancer sought additional pain relief medication or complained repeatedly of having dental pain. Dancer did not request a different diet due the problems with his teeth. *Cf. Moore v. Jackson*, 123 F.3d 1082, 1084-87 (8th Cir. 1997)(genuine issue of fact existed where dentist knew of inmates serious dental condition, inmate repeatedly reported severe tooth pain in medical service requests and grievances, but care delayed from April to December).

With respect to the problem with his eyes, Dancer first brought that issue up on April 14th. He was not seen by the doctor until July 21st. At that time, he was prescribed Clear Eyes and was to be scheduled to see an optometrist. The optometrist's office refused to see Dancer unless up front payment was received. The ADC refused to prepay. There is no indication in Brown's affidavit that she took further steps to ensure Dancer was seen by an optometrist. Dancer, however, indicates he had an appointment with an optometrist on August 19th but was transferred to the ADC that day.

"A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that [the] delays adversely affected his prognosis." *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir. 1995). No such evidence exists in this case.

### 5. Conclusion

For the reasons stated, I recommend that the summary judgment motion filed by Defendant (Doc. 21) be granted and this case be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are**

**reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 29th day of February 2012.**

                                      /s/ Barry A. Bryant  
                                      HON. BARRY A. BRYANT  
                                      UNITED STATES MAGISTRATE JUDGE